Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| | | |
|---|---|---|
| ANA M. COSME SANTIAGO<br>Apelante<br><br>v.<br><br>JUAN A. RAMOS DIAZ, FULANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS, SPIRAL HOLDING, INC.<br>Apelados | KLAN202300575 | Apelación procedente del Tribunal de Primera Instancia Sala de Humacao<br><br>Caso Núm. HU2022CV001561<br><br>Sobre:<br>Incumplimiento de Contrato |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 26 de septiembre de 2023.

Comparece la señora Ana M. Cosme Santiago (señora Cosme Santiago o apelante), solicitando la revocación de una *Sentencia* emitida por el Tribunal de Primera Instancia (TPI), el 2 de junio de 2023.[1] Mediante su dictamen, el foro primario acogió una petición de sentencia sumaria presentada por el señor Juan A. Ramos Díaz, la señora Ana Julia Lujan Ríos, la Sociedad de Gananciales compuesta por estos y Spiral Holdings, Inc. (en conjunto, los apelados), desestimando la demanda al concluir que los reclamos presentados constituían cosa juzgada, por estos haber sido adjudicados en otro pleito.

Examinados los asuntos esgrimidos, procede *confirmar* la *Sentencia* recurrida, aunque por fundamentos diferentes a los expresados por el foro primario.

---

[1] Notificada el 5 de junio de 2023.

NÚMERO IDENTIFICADOR

SEN2023_____

## I. Resumen del tracto procesal

El 16 de noviembre de 2022, la señora Cosme Santiago presentó una *Demanda* sobre incumplimiento de contrato contra los apelados. Adujo que había suscrito un contrato de arrendamiento con los apelados, que entró en vigor el 1 de julio de 2014, respecto a un inmueble localizado en Costa Verde #24, Palmas del Mar, Humacao. Añadió que dicho contrato contenía una cláusula de opción de compra, con un precio de $700,000.00. Asimismo, manifestó que la renta del inmueble era de $3,000.00 mensuales, de los cuales $1,000.00 mensuales serían acreditados al precio de venta de la propiedad, en caso de que se ejercitara la opción de compra. Explicó que el contrato era por un término de un año e incluía una extensión automática de un año adicional, a menos que treinta días antes se le notificara por escrito su terminación. Añadió que, aunque los referidos términos acordados habían vencido, las partes continuaron la relación, causando la extensión del contrato. Sostuvo que ella continuó el pago mensual según lo acordado, incluyendo la parte correspondiente a la opción, y los apelados siguieron recibiendo tales pagos. Ante ello, el 22 de febrero de 2022, decidió ejercitar la opción de compraventa, mediante carta dirigida a Spiral Holding Inc. y/o Juan A. Ramos Díaz, petición que alega no fue atendida por los apelados.

En consecuencia, la apelante asevera que, desde que entró en vigor el contrato, el 1 de julio de 2014, hasta el último pago realizado en octubre de 2022, acumuló la cantidad de $100,000.00 que serían acreditados al precio de venta de la propiedad. Sin embargo, adujo que los apelados estaban haciendo gestiones para que desalojara la propiedad, a pesar de haber ejercido su derecho a la opción de compra. Por tanto, solicitó como remedio que se declarara su derecho a adquirir el dominio de la propiedad por el precio de venta acordado, menos los

$100,000.00 acumulados hasta octubre de 2022, es decir, por la suma de $600,000.00.

Posteriormente, el 13 de febrero de 2023, la apelante presentó *Moción Solicitando Inclusión en el Epígrafe,* solicitando que se incluyera a la señora Ana Luján Ríos por sí y en representación de la Sociedad Legal de Bienes Gananciales compuesta con el señor Juan A. Ramos Díaz, pues al momento de presentar la *Demanda* la identificó como *Fulana de Tal* por desconocer su nombre.

Por su parte, los apelados presentaron *Contestación a la Demanda,* el 27 de marzo de 2023. En esencia, esgrimieron que el contrato de opción tuvo vigencia por los primeros dos años. Ante ello, manifestaron que la apelante perdió su derecho a que se acumulara parte de la renta para propósitos de la opción, por lo que, todo el pago era en concepto de lo primero. Por otro lado, indicaron que estaban haciendo gestiones para que la señora Cosme Santiago desalojara la propiedad. Para este último propósito, informaron que, en otro caso instado ante el TPI, HU2022CV1258, ya se había emitido *Sentencia de desahucio* contra la apelante, dictamen que fue confirmado por el Tribunal de Apelaciones, KLAN202300024, y el Tribunal Supremo se negó a atender. Cónsono con esto, arguyeron que el remedio solicitado por la apelante ya había sido resuelto, por lo cual estaba impedida de solicitar remedios al interponerse un impedimento colateral por sentencia. Por último, aseveraron que la apelante había aceptado que el contrato estaba vencido y se encontraba ocupando la propiedad por virtud de un contrato de mes a mes.

En armonía, el 14 de abril de 2023, los apelados presentaron una *Moción de Sentencia Sumaria.* En síntesis, argumentaron que la apelante estaba tratando de litigar una controversia que ya había sido resultas en el caso HU2022CV01257. En lo específico, arguyeron que en el caso

citado, el Tribunal determinó que a la fecha de la radicación de la demanda no existía contrato vigente entre las partes, y posteriormente, el Tribunal de Apelaciones determinó que el contrato de opción venció el 30 de junio de 2016. Afirmaron que tanto las partes, como el contrato en cuestión en ambos casos son los mismos, es decir, hay identidad de partes y causa. En consecuencia, argumentaron que la apelante no podía relitigar un asunto que fue dilucidado por el TPI, confirmado por el Tribunal de Apelaciones, y denegado el recurso de *certiorari* presentado ante el Tribunal Supremo, convirtiéndose en cosa juzgada.

A raíz de esto, el 5 de mayo de 2023, la señora Cosme Santiago presentó *Oposición a Moción de Sentencia Sumaria.* Sobre los asuntos de derecho levantados por los apelados, aseveró que no se cumplían los elementos necesarios para constituirse la cosa juzgada, ni el impedimento colateral por sentencia. En particular, adujo que tal defensa afirmativa no resultaba de aplicación, pues en el pleito anterior la controversia versaba sobre quién tenía el derecho inmediato a la posesión, en el contexto de una acción de desahucio en precario. Contrario a ello, en el presente caso la controversia refiere a si la apelante tiene o no derecho a adquirir la propiedad por el precio pactado, al ejercitar la opción de compra acordada. Reiteró que, en los pleitos sobre desahucio en precario, no se permite discutir o considerar por el tribunal asuntos no relacionados al derecho inmediato a la posesión del inmueble, pues se trata de una acción posesoria, donde solo cabe discutir el derecho a la posesión de un inmueble. En definitiva, sostuvo que no se cumplían los elementos de la cosa juzgada, pues carecía de identidad de causas entre ambos casos.

A lo anterior añadió que tampoco aplicaba la doctrina de impedimento colateral por sentencia. Sobre ello, puntualizó que para la aplicación de dicha defensa el asunto que se resolvió en el primer caso

tiene que haber sido una controversia o asunto esencial para la adjudicación del segundo caso. Afirmó que el procedimiento sumario de desahucio en precario no requiere para su solución adjudicar la opción y su ejercicio por la apelante. También, manifestó que la parte contra quien se levanta el impedimento colateral tiene que haber tenido en el primer caso la oportunidad de utilizar los mecanismos disponibles en las Reglas de Procedimiento Civil y de Evidencia para descubrir la verdad, asunto que no ocurrió en el proceso de desahucio efectuado, pues dicho proceso especial no lo permite.

Además, la apelante planteó que, en la sentencia emitida por un foro hermano sobre el proceso de desahucio conducido entre las partes, fue emitido un *obiter dictum,* cuando se indicó que la opción había vencido al momento en que el contrato original terminó.

Por último, la apelante sostuvo haber ejercido su derecho a la opción antes de que los apelados dieran por terminado su contrato. Por consiguiente, afirmó que, habiéndose ejercitado el derecho de manera oportuna, los apelados no podían liberarse de su obligación de vender en los términos acordados. Para sostener tal razonamiento, esgrimió la figura de la tácita reconducción, de modo que, las obligaciones entre las partes subsistían

Examinada la moción dispositiva y su oposición, el 2 de junio de 2023,[2] el TPI emitió *Sentencia Sumaria* declarándola Ha Lugar. Como parte de su dictamen, dicho foro enumeró nueve determinaciones de hechos:

1. La parte demandada es dueña del inmueble localizado en Costa Verde #24, Palmas del Mar, Humacao, PR.
2. El día 26 de mayo de 2014 se firmó el contrato entre las partes. El mismo entró en vigor el 1ero de julio de 2014.
3. El contrato contiene una cláusula de opción de compra. La misma establece un precio de venta de $700,000.00.
4. El 16 de noviembre de 2022, la demandante, presentó una demanda sobre incumplimiento de contrato contra

---

[2] Notificada el 5 de junio de 2023.

Juan A. Ramos Díaz, Fulana de Tal y la Sociedad legal de Gananciales compuesta por ambos y Spiral Holding, Inc.

5. Previo a eso, la parte demandada radicó un pleito de desahucio en el Tribunal de Primera Instancia de Humacao: Juan A. Ramos Díaz vs Ana M Cosme, HU2022CV01257 para recuperar la posesión de su inmueble, ya que la Sra. Ana Cosme se encontraba ostentando la posesión de éste, alegadamente en aquel momento, sin contrato vigente.

6. La parte demandante suscribió una declaración Jurada el 28 de octubre de 2022 donde acepta que está en posesión del inmueble de la parte aquí demandada en función de un contrato renovado de mes a mes.

7. Luego de un juicio en su fondo, el Tribunal de Instancia dictó sentencia en el caso HU2022CV01257, la cual, hoy, es final, firme e inapelable, donde declara con lugar el desahucio de la Sra. Ana Cosme y a su vez determina que "A la fecha de la radicación de la demanda que nos ocupa no existía contrato vigente entre las partes."

8. La parte Demandante apeló oportunamente la sentencia de desahucio al Tribunal de Apelaciones bajo el caso número KLAN202300024, y dicho Tribunal confirmó al Tribunal de Instancia, determinando que el Tribunal de Primera Instancia "no erró al concluir que a la fecha de la radicación de la demanda no existía contrato vigente entre las partes."

9. El contrato de opción suscrito por las partes venció el 30 de junio de 2016. En su confirmación de la sentencia del tribunal de Instancia, el Tribunal Apelativo sostiene lo siguiente: "De igual forma, la parte apelante no puede acogerse al derecho de opción de compra para preservar su derecho a permanecer en la propiedad. Entendemos que, según lo pactado entre las partes, el derecho de opción tenía una vigencia máxima hasta el 30 de junio de 2016. Por lo que la apelante no puede reclamar dicha opción."

Conforme a ello, el foro primario adjudicó que la controversia esencial ya ha sido resuelta por este Tribunal de Apelaciones, en el KLAN202300024, por lo tanto, era cosa juzgada.

Inconforme, la señora Cosme Santiago acude ante nosotros, imputándole al *foro a quo* la comisión del siguiente error:

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, AL DICTAR SENTENCIA SUMARIA, DETERMINANDO QUE EXISTE IDENTIDAD DE LAS COSAS, DE LAS CAUSAS, DE LAS PARTES Y DE CARÁCTER EN QUE COMPARECIERON EN LA ACCIÓN HU2022CV01257 Y EN LA PRESENTE ACCIÓN.

A su vez, los apelados ripostaron mediante la presentación de un *Alegato del apelado.*

Contando con la comparecencia de las partes, estamos listos para resolver.

**II. Exposición de Derecho**

**A. La Sentencia Sumaria**

El propósito de las Reglas de Procedimiento Civil es proveer a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Roldan Flores v. M. Cuebas et al., 199* DPR 664, 676 (2018); *Rodríguez Méndez et al. v. Laser Eye,* 195 DPR 769, 785 (2016), *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014). Procede dictar sentencia sumaria si "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia si las hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica". *González Santiago v. Baxter Healthcare,* supra; *Roldan Flores v. M. Cuebas et al.,* supra; *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 225 (2015), *SLG Zapata-Rivera v. J. F. Montalvo*, 189 DPR 414, 430 (2013).

A tenor, este mecanismo está disponible para la disposición de reclamaciones que contengan elementos subjetivos únicamente cuando no existan controversias de hechos esenciales y pertinentes. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018), *Velázquez Ortiz v. Mun. De Humacao,* 197 DPR 656, 661 (2017), *Reyes Sánchez v. Eaton Electrical,* 189 DPR 586, 594-595 (2013), *Const. José Carro v. Mun. de Dorado*, 186 DPR 113, 129 (2012). De lo que se sigue que "la mera existencia de una controversia de hecho es suficiente para derrotar una moción de sentencia sumaria ... cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente". *Pepsi-Cola v. Mun.*

*Cidra et al.,* 186 DPR 713, 756 (2012). Se considera un hecho esencial y pertinente, aquél que puede afectar el resultado de la reclamación acorde al derecho sustantivo aplicable. *Ramos Pérez v. Univisión,* 178 DPR 200, 213.

Por otra parte, es esencial reconocer que la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R.36, establece de manera específica los requisitos de forma con los que debe cumplir la parte que promueve la moción de sentencia sumaria, así como la parte que se opone a ella. En lo pertinente, la parte promovente debe exponer un listado de hechos no controvertidos, desglosándolos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. A su vez, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. *Meléndez González et al. v. M. Cuebas,* 193 DPR 100,137 (2015).

La parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón,* 204 DPR 20, 44. Es decir, no puede descansar exclusivamente en sus alegaciones ni tomar una actitud pasiva. *Toro Avilés v. P.R. Telephone Co.,* 177 DPR 369, 383 (2009). Por el contrario, tiene que controvertir la prueba presentada por la parte solicitante, a fin de demostrar que sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión. *González Aristud v. Hosp. Pavía,* 168 DPR 127 (2006).

Nuestro más alto foro ha manifestado que "a menos que las alegaciones contenidas en la moción de sentencia sumaria queden

debidamente controvertidas, éstas podrían ser admitidas y, de proceder en derecho su reclamo, podría dictarse sentencia sumaria a favor de quien promueve". *Meléndez González et al. v. M. Cuebas*, supra*,* pág. 137. Sin embargo, "toda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a la misma". *ELA v. Cole,* 164 DPR 608, 626 (2005).

**B. Función revisora del foro apelativo con respecto a la sentencia sumaria dictada por el foro primario**

En el caso de revisar sentencias del Tribunal de Primera Instancia dictadas mediante el mecanismo de sentencias sumarias, o resolución que deniega su aplicación, nuestro Tribunal de Apelaciones se encuentra en la misma posición que el tribunal inferior para evaluar su procedencia. *Meléndez González et al. v. M. Cuebas*, supra. Al disponer de una moción de sentencia sumaria, el tribunal necesariamente tendrá que escudriñar las alegaciones de la demanda o las defensas interpuestas para determinar si existen hechos en controversia que deban esclarecerse mediante un juicio. *León Torres v. Rivera Lebrón*, supra. Los criterios para seguir por este foro intermedio al atender la revisión de una sentencia sumaria dictada por el foro primario han sido enumerados con exactitud por nuestro Tribunal Supremo. *Íd.* Según los tales, el Tribunal de Apelaciones debe:

1. examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

2. revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

3. revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales

encontró que están en controversia y cuáles están incontrovertidos;

4. y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

Además, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras: (1) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia; (2) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González, et al. v. M. Cuebas*, supra. El primer punto se enfoca en que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlos. *Íd.,* pág. 115. También, se ha aclarado que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. *Vera v. Bravo*, 161 DPR 308, 335 (2004).

### C. Impedimento Colateral por Sentencia

En nuestro ordenamiento la cosa juzgada está concebida en el Art. 1204 del Código Civil[3], 31 LPRA sec. 3343. La figura del impedimento colateral por sentencia[4] es una modalidad de la doctrina de cosa juzgada. *Puerto Rico Wire Products, Inc., v. C. Crespo & Asociados Inc.*, *supra.* Al igual que la doctrina de cosa juzgada, el propósito de la figura del impedimento colateral por sentencia es promover la economía procesal y

---

[3] El Código Civil de Puerto Rico de 1930 fue derogado por el Código Civil de Puerto Rico de 2020, a través de la Ley Núm. 55-2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado por haber sido la ley vigente al momento de la controversia que nos ocupa.

[4] Por razones que explicaremos en la sección que destinamos a la aplicación del derecho a los hechos, en este segmento solo prestaremos atención a las características del impedimento colateral por sentencia.

judicial y amparar a los ciudadanos del acoso que necesariamente conlleva litigar en más de una ocasión hechos ya adjudicados. *Puerto Rico Wire Products, Inc., v. C. Crespo & Asociados Inc.*, *supra.*

El impedimento colateral por sentencia se manifiesta en dos modalidades, la defensiva y la ofensiva. *A&P General Contractors, Inc. v. Asociación Caná, Inc.*, *supra,* pág. 758. La modalidad defensiva le permite al demandado levantar la defensa de impedimento colateral por sentencia, a los fines de impedir la litigación de un asunto levantado y perdido por el demandante en un pleito anterior frente a otra parte. *Íd.* De otro lado, la modalidad ofensiva es articulada por el demandante en un litigio posterior para impedir que el demandado re litigue los asuntos ya dilucidados y perdidos frente a otra parte. *Íd.* Como se puede apreciar, el denominador común entre ambas modalidades es que la parte afectada por la interposición del impedimento colateral ha litigado y ha perdido el asunto en el pleito anterior. *Id; Puerto Rico Wire Products, Inc., v. C. Crespo & Asociados Inc.*, *supra*

La doctrina del impedimento colateral por sentencia "surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final, [y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas." *A & P General Contractors, Inc. v. Asociación Caná, Inc.*, 110 DPR 753, 762 (1981). Es decir, el impedimento colateral por sentencia impide que se litigue en un litigio posterior un hecho esencial que fue adjudicado mediante sentencia final en un litigio anterior. *Puerto Rico Wire Products, Inc., v. C. Crespo & Asociados Inc.*, *supra.* No obstante, a diferencia de la doctrina de cosa juzgada, la aplicación de la figura de impedimento colateral por sentencia no exige la identidad de causas, esto es, que la razón de pedir plasmada en la demanda sea la misma en ambos

litigios. *Rodríguez v. Colberg*, 131 DPR 212, 219 (1989). Sobre la identidad de causas, en *A & P General Contractors, Inc. v. Asociación Caná, Inc.*, *supra,* pág. 765, el Tribunal Supremo señaló que en el contexto particular de la doctrina de cosa juzgada y de impedimento colateral por sentencia, tal requisito significa el fundamento capital, es decir, el origen de las acciones o excepciones planteadas y resueltas.

En definitiva, la defensa de impedimento colateral exige que se demuestre: (1) que la cuestión o asunto que se desea excluir en la acción posterior es la misma que se determinó en la acción anterior; (2) que esa cuestión, en efecto, se litigó; (3) que la cuestión se determinó por una sentencia válida, final y firme, y; (4) que esta determinación era esencial para la sentencia dictada. *Martínez Díaz v. E.L.A.*, 182 DPR 580, 587 (2011).

### D. Desahucio

La acción de desahucio es el mecanismo que tiene el dueño de un inmueble para "recuperar la posesión de hecho de una propiedad, mediante el lanzamiento o expulsión del arrendatario o precarista que la detenta sin pagar canon o merced alguna." *Cooperativa de Vivienda Rolling Hills v. Colón Lebrón,* 203 DPR 812 (2020). El Código de Enjuiciamiento Civil, según enmendado, 32 LPRA sec. 2821 *et seq.*, contempla un procedimiento especial sumario para las acciones de desahucio. **Se trata de un proceso expedito**, que puede ser presentado por los dueños de la finca, sus apoderados, los usufructuarios, o cualquier otro que tenga derecho a disfrutar la propiedad y sus causahabientes. *Mora Dev. Corp. v. Sandín,* 118 DPR 733 (1987) (Énfasis nuestro). Su **carácter sumario** responde al interés del Estado en atender con agilidad el reclamo de una persona que es dueña de un inmueble la cual se le ha impedido **ejercer su derecho a poseer y disfrutar del mismo.** *Cooperativa de Vivienda Rolling Hills v. Colón Lebrón,*

*supra*; *ATPR v. SLG Volmar-Mathieu,* 196 DPR 5, 9 (2016) (Énfasis nuestro).

Los procesos de desahucio **se centran únicamente en recobrar la posesión del inmueble**, mediante el lanzamiento o expulsión del arrendatario o precarista que la detente. *Acosta et al. v. S.L.G. Ghigliotti,* 186 DPR 984, 989 (2012) (Sentencia); *C.R.U.V. v. Román,* 100 DPR 318 (1971) (Énfasis nuestro). Por ello, en la acción sumaria se debe limitar la concurrencia o consolidación de otras acciones o defensas. Cuando el demandado presenta otras defensas afirmativas, dicha parte puede solicitar que el procedimiento se convierta en uno ordinario. *ATPR v. SLG Volmar-Mathieu, supra,* pág. 10. En tales casos, la reclamación estará sujeta a las reglas de la litigación civil ordinaria, excluyendo la reglamentación de desahucio y sus restringidas condiciones. *Id.*

De otro lado, **si una parte alega la existencia de un conflicto de título, éste deberá dilucidarse en un juicio ordinario.** *C.R.U.V. v. Román, supra; Negrón v. Corujo,* 67 DPR 398 (1947); *Escudero v. Mulero,* 63 DPR 574 (1944); *González v. Colón,* 49 DPR 557 (1936); *Ermita de Nuestra Señora del Rosario v. Collazo,* 41 DPR 596 (1930). (Énfasis provisto). Se entiende que existe un conflicto de título sólo si un demandado en desahucio produce prueba que tienda a demostrar que tiene algún derecho a ocupar el inmueble en cuestión, y que tiene un título tan bueno o mejor, que el del demandante. *C.R.U.V. v. Román, supra,* pág. 322. Una mera alegación de título por parte del demandado, desprovista de prueba, es insuficiente para derrotar la acción de desahucio por la vía sumaria. *Martínez Santiago v. Dalmau Andrades,* 93 DPR 191, 194 (1966). Para que exista un conflicto de título, el demandado debe oponer un título de dominio que tienda a justificar que la posesión en que se halla no es la de arrendatario, administrador, custodio del inmueble o que lo disfruta en concepto de precarista, esto

es, sin título, por la tolerancia del dueño y sin satisfacer renta o merced alguna. *C.R.U.V. v. Román, supra*, pág. 322.

### E. Opción de compraventa

Antes de la aprobación del Código Civil del 2020,[5] había ausencia de regulación expresa en nuestra legislación sobre el contrato de opción, por lo que sus contornos habían sido delineados por la jurisprudencia. *P.D.C.M. Assoc. v. Najul Bez,* 174 DPR 716, 724 (2008). En consonancia, nuestro Tribunal Supremo definió tal relación contractual como "el convenio por el cual una parte (llamada concedente, promitente u optatario) concede a la otra (llamada optante), **por tiempo fijo** y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal". *Íd.* (Énfasis nuestro). De esta manera, el contrato de opción le confiere al optante la facultad de decidir, dentro de un plazo cierto, si celebra el contrato por el que se opta. *Íd.* Cabe mencionar que, si se renuncia dicho derecho de opción o **no se ejercita durante el término concedido, queda extinguido pues se estima caducado.** *Mayagüez Hilton Corp. V. Betancourt,* 156 DPR 234, 249 (2002) (Énfasis nuestro).

La opción está atada a un contrato definitivo que las partes han delimitado previamente. *P.D.C.M. Assoc. v. Najul Bez,* supra, en la pág. 724. Los requisitos esenciales para su validez son: (1) la concesión, de modo exclusivo, de una parte a la otra de la potestad decisoria sobre la celebración del contrato por el cual se opta; (2) la especificación de un **plazo cierto**; y (3) sin otra condición que no sea el juicio del optante. *Mayagüez Hilton Corp. V. Betancourt,* supra. (Énfasis nuestro).

Por otro lado, el derecho de opción no sólo concede al optante la facultad de perfeccionar el contrato definitivo mediante la aceptación de

---

[5] El derecho de opción actualmente está recogido en el artículo 1029 del nuevo Código Civil. 31 LPRA sec. 8821. No obstante, para fines de la presente, se hace referencia al derecho vigente al momento de pactarse el contrato objeto de la controversia que nos ocupa.

la opción, sino que impone al concedente la obligación de no frustrar el derecho del que goza el optante. *P.D.C.M. Assoc. v. Najul Bez,* supra, en la pág. 724; *Mayagüez Hilton Corp. V. Betancourt,* supra, en la pág. 250.

Como regla general, el optante puede ejercer su derecho de opción simplemente notificando al optatario su voluntad de perfeccionar el convenio por el cual optó. *Íd,* pág. 246. Sobre lo cual *la declaración del optante tiene el carácter unilateral y recepticia, no sujeta a forma expresa, pero **tendrá que constar de manera fehaciente**.* (Énfasis provisto). J. Puig Brutau, *Fundamentos de Derecho Civil,* 2da ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. 2, pág. 50. Si la opción se ejerce **en el plazo acordado**, el contrato de opción queda extinguido, a la vez que se perfecciona el contrato aceptado, según haya sido previamente delimitado. (Énfasis provisto). *Mayagüez Hilton Corp. V. Betancourt,* supra, en la pág. 249. No obstante, el derecho del optante a declarar su voluntad de dar efectividad al contrato por el cual se opta, caduca, si ésta no es notificada al concedente durante la vigencia del plazo de la opción, si éste se hubiese fijado. *Íd.*

**III. Aplicación del Derecho a los hechos**

a.

Según indicamos en la *exposición de derecho,* la revisión por este foro intermedio de la determinación del TPI sobre una moción de sentencia sumaria y su oposición acontece de *novo,* de lo que se sigue que estamos en igual posición que el foro primario para aquilatarlas.

Así las cosas, como cuestión inicial, nos corresponde verificar que tanto la moción de sentencia sumaria como su oposición, cumplan con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra.* A partir de tal regla, la parte promovente de la moción de sentencia sumaria debía exponer, entre otros, un listado de hechos no controvertidos, desglosándolos en párrafos debidamente numerados y,

para cada uno de ellos, especificar la prueba admisible que lo apoyara. En el caso del promovido, este estaba obligado a citar en el escrito en oposición, específicamente, los párrafos según enumerados por el promovente que entendía estuvieran en controversia y, para cada uno de los que pretendiera controvertir, detallar la evidencia admisible que sostuviera su impugnación, con cita a la página o sección pertinente. *Meléndez González et al. v. M. Cuebas,* supra,137 (2015).

Al examinar la moción de sentencia sumaria, nos resulta evidente que los apelados cumplieron con los requisitos aludidos en el párrafo que antecede. A esos efectos, efectuaron la enumeración de los hechos que juzgaron incontrovertidos e identificaron la prueba documental con la que pretendían sostenerlos.

Por el contrario, la *Oposición a moción de sentencia sumaria* presentada por la apelante incumplió con las formalidades exigidas por la Regla 36.3 (b) de Procedimiento Civil, *supra.* Esto, por cuanto la apelante no incluyó en su escrito una relación concisa y organizada, con referencia a los párrafos enumerados por los apelados, de los hechos materiales que se proponían controvertir y de la prueba documental necesaria para ese fin. Con precisión, la *Oposición a sentencia sumaria*[6] inició con dos breves párrafos introductorios, para de ahí proceder directamente a refutar los argumentos de derecho alzados por los apelados en la *Moción de sentencia sumaria*, **sin ocuparse en manera alguna de impugnar los hechos que se propusieron como incontrovertidos**. Es decir, **en la *Oposición a sentencia sumaria* no se controvirtieron ninguno de los hechos que los apelados propusieron como incontrovertidos**.

Como se sabe, ante una moción de sentencia sumaria, la parte promovida, —en este caso la apelante—, no podía descansar

---

[6] Apéndice 23 del recurso de apelación, págs. 83-96.

exclusivamente en las alegaciones de la demanda, ni tomar una actitud pasiva, sino que, como parte de su carga, debía puntualizar aquellos hechos propuestos que pretendía controvertir y, si así lo deseaba, someter hechos materiales adicionales que alegara no estaban en controversia e impedían disponer del asunto mediante sentencia sumaria. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). Después de todo, este mecanismo procesal procura profundizar en las alegaciones y verificar si, en efecto, los hechos allí descritos ameritan dilucidarse en juicio. *Íd*. Sin embargo, al examinar la *Oposición a sentencia sumaria* resulta evidente que la apelante optó por descansar en sus alegaciones y no presentar los hechos materiales que juzgara incontrovertidos, al así obrar se arriesgó a que los hechos enumerados en la *Moción de sentencia sumaria* fueran acogidos como incontrovertidos.

Sobre lo anterior, es de ver que en la sección IV de la *Moción de sentencia sumaria* instada por los apelados, estos incluyeron como su cuarto hecho incontrovertido el siguiente: "*[e]l contrato de opción suscrito por las partes venció el 30 de junio de 2016*",[7] para lo cual, acompañaron copia del contrato firmado entre las partes, del que surgía el término en el cual cabía ejercer la opción a compra. En su *Oposición a sentencia sumaria* la apelante no presentó oposición a tal hecho propuesto, como tampoco presentó como hecho incontrovertido el ejercicio de la opción a compra alegada, y menos aún, documentación para sostener ese esencial hecho para la causa de acción instada.[8]

b.

Con todo, procedemos a evaluar el señalamiento de error traído por la parte apelante en el recurso de apelación que presentó. La señora

---

[7] Apéndice 16 del recurso de apelación, pág. 54.

[8] En la décima alegación de la *Demanda* se esgrimió que, *[e]l 22 de febrero de 2022 la opción de compraventa fue ejercitada por esta parte mediante carta dirigida a Spiral Holding Inc. y/o Juan A. Ramos Díaz. La parte demandada hizo caso omiso de esta petición.* Apéndice 2 del recurso de apelación, pág. 10. Sin embargo, en la *Oposición a Sentencia Sumaria* no se propuso tal hecho como incontrovertido, ni se anejó copia de la carta aducida.

Cosme Santiago aseveró a través de dicho error que el TPI incidió al declarar Ha Lugar la moción de sentencia sumaria, por vía de la aplicación de la defensa de cosa juzgada, determinando que existía identidad de cosas, causas y partes entre el caso HU2022CV01257 y la presente causa de acción. Con relación a este único asunto, coincidimos con la apreciación de la apelante en que la defensa de cosa juzgada no resultaba extensiva a este caso, veamos.

En *Presidential v. Transcaribe*, 186 DPR 263 (2012) nuestro Tribunal Supremo estableció con claridad que los demandados tienen el deber de levantar todas las defensas afirmativas que entiendan pertinentes en su primera alegación, la cuales tienen que ser alegadas en forma clara, expresa y específica, por cuanto de así no hacerlo, se entenderá que fueron renunciadas. Por tanto, los tribunales no pueden levantar *motu proprio* las defensas afirmativas a las que el demandado renunció, excepto por la defensa de falta de jurisdicción sobre la materia. *Íd*. Además, en la misma Opinión el Alto Foro dejó claramente establecido que **el impedimento colateral es una modalidad distinta de la cosa juzgada, por lo que constituyen defensas afirmativas <u>independientes</u> que se deben plantear cada una de forma clara, expresa y específica en la primera alegación**. (Énfasis y subrayado provistos). *Íd. A pesar de que el fraccionamiento de causa e impedimento colateral son modalidades de la doctrina de cosa juzgada, estas son defensas afirmativas distintas. Íd.* En palabras llanas, en la contestación a la demanda se tenía que alzar de manera distintiva e independiente, las defensas de cosa juzgada e impedimento colateral por sentencia, pues de no hacerse, se entendería renunciada la que no hubiese sido mencionada o precisada.

Entonces, al examinar la contestación a la demanda presentada por los apelados, y las defensas afirmativas allí erguidas, nos percatamos

que dicha parte **no** levantó la defensa afirmativa de cosa juzgada. En la contestación a demanda, inciso segundo de las *Defensas Afirmativas* esgrimidas se dispuso lo siguiente, *[e]l remedio y la solicitud esbozada por la parte demandante ha sido resuelto por los honorable tribunales, al punto de que ha sido confirmado por el Tribunal Apelativo y declarado no a (sic) lugar por el Tribunal Supremo, de tal manera que dicha parte **esta (sic) impedida colateralmente por sentencia** de pedir dichos remedios.[9]* (Énfasis provisto). Como se nota, los apelados hicieron mención del impedimento colateral por sentencia, pero no incluyeron la cosa juzgada. De los apelados haber pretendido esgrimir ambas defensas, (la de cosa juzgada e impedimento colateral por sentencia), así tenían que hacerlo de manera diferenciada, pero no lo hicieron.

En consecuencia, visto que la única defensa afirmativa alzada en la contestación a demanda fue la del impedimento colateral por sentencia, el TPI estaba impedido de aplicar la defensa de cosa juzgada al asunto, debiendo considerarla como renunciada por los apelados. "Los tribunales están impedidos de levantar las defensas afirmativas *motu proprio* cuando las partes han renunciado a ellas". *Presidential v. Transcaribe*, supra, pág. 284.

Lo anterior no dispone del asunto pues, aunque el TPI estaba impedido de considerar la defensa de cosa juzgada, sí estaba llamado a considerar la del impedimento colateral por sentencia, en tanto esta última fue expresamente esgrimida como defensa afirmativa en la contestación a demanda. Claro, tal ejercicio adjudicativo debió acontecer dentro del marco de la consideración a la moción dispositiva que se estaba dilucidando.

Sobre la defensa bajo discusión habíamos advertido que la parte que la promueve tendría que demostrar: (1) que la cuestión o asunto que

---

[9] Apéndice 9no del recurso de apelación, pág. 39.

se desea excluir en la acción posterior es la misma que se determinó en la acción anterior; (2) que esa cuestión, en efecto, se litigó; (3) que la cuestión se determinó por una sentencia válida, final y firme, y; (4) que esta determinación era esencial para la sentencia dictada. *Martínez Díaz v. E.L.A.*, 182 DPR 580, 587 (2011). Además, subrayamos que "surte efectos cuando **un hecho esencial para el pronunciamiento de una sentencia** se dilucida y se determina mediante sentencia válida y final, [y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas." *A & P General Contractors, Inc. v. Asociación Caná, Inc.*, 110 DPR 753, 762 (1981). Es decir, el impedimento colateral por sentencia impide que se litigue en un litigio posterior un hecho esencial que fue adjudicado mediante sentencia final en un litigio anterior. *Puerto Rico Wire Products, Inc., v. C. Crespo & Asociados Inc., supra.*

Lo anterior debe ser examinado en conjunto con las características propias del proceso especial de desahucio. Como indicamos, este es el mecanismo que tiene el dueño de un inmueble para recuperar la posesión de una propiedad, centrándose dicho proceso únicamente en recobrar la posesión del inmueble, mediante el lanzamiento o expulsión del arrendatario o precarista que la detente. *Acosta et al. v. S.L.G. Ghigliotti*, supra. En caso de alegarse un conflicto de título, entonces ello debe ser dilucidado en un juicio ordinario, pero para ello quien esgrima tal conflicto tendría que demostrar que tiene un título tan bueno o mejor que el demandante. *C.R.U.V. v. Román*, supra.

Teniendo en consideración ambas figuras de derecho aludidas, se debe notar que los apelados levantaron la defensa de impedimento colateral por sentencia amparados en el dictamen del caso identificado con el alfanumérico HU2022CV01257, que fue tramitado al amparo del artículo 620 del Código de Enjuiciamiento Civil, *supra,* es decir, mediante

el procedimiento sumario de desahucio. Por lo explicado, en el caso de desahucio la controversia esencial a ser dilucidada versaba sobre la posesión del inmueble en controversia. Por tanto, la controversia atinente al ejercicio oportuno o no por la apelante de la opción de compra acordada entre las partes **no** resultaba en un asunto esencial para dirimir la petición sobre desahucio. Siendo que la defensa del impedimento colateral por sentencia impide que se litigue en un litigio posterior **un hecho esencial** que fue adjudicado mediante sentencia final en un litigio anterior, tal defensa resulta inaplicable al caso ante nosotros.

Elaborando, en el proceso sumario de desahucio celebrado en el caso HU2022CV01257, el único asunto que se podía atender era el de la posesión de la propiedad. Por el contrario, la controversia medular ante nosotros versa sobre el ejercicio oportuno o no del derecho a opción a compra a que se obligaron las partes, es decir, la causa de acción es distinta a la dilucidada en el proceso especial de desahucio, y no resultaba esencial la determinación sobre la opción para el dictamen. Visto que el HU2022CV01257 aconteció en el proceso particular del desahucio en precario, no podemos concluir que la parte apelante hubiese tenido allí la oportunidad cabal de litigar su presunto derecho a reclamar la opción acordada, ni que, de haber sido litigado tal asunto, hubiese sido su dilucidación uno esencial para que se dictase la sentencia. En términos más simples, la alegación sobre el derecho a ejercer una opción a compra no representaba un mejor título que oponer al de los apelados sobre el inmueble que estaba ocupando la apelante, de aquí que resolver tal controversia no era esencial a tal proceso sumario, excluyendo el uso de la defensa de impedimento colateral por sentencia, al no cumplirse con los requisitos para su activación.

c.

Entonces, quedaría por auscultar si la consideración de la moción de sentencia sumaria y su oposición resultaba suficiente para disponer de la causa de acción presentada. Juzgamos que sí.

Según adelantamos, mediante su moción de sentencia sumaria los apelados presentaron una serie de hechos como incontrovertidos, que no fueron impugnados por la apelante en el escrito en oposición a sentencia sumaria. Tal omisión por la apelante en su *Oposición a sentencia sumaria* tuvo la consecuencia de colocarla en la situación de que los hechos señalados por los apelados fueran admitidos como incontrovertidos, y dictarse sentencia conforme a estos, de ser aplicable.

De la documentación incluida por los apelados en apoyo de los hechos que propusieron como incontrovertidos en la moción de sentencia sumaria, surge que la señora Cosme Santiago y los primeros suscribieron un contrato de arrendamiento de un inmueble localizado en Humacao, el 26 de mayo de 2014. La Sección 30 de dicho contrato se denominó *Option to Purchase* (opción a compras), y en esta se establecieron los siguientes términos:

> The Lessor grants the Lessee a right of first refusal to purchase the property at a sales price of seven hundred thousand dollars ($700,000.00), **during the duration of the lease (One year renewable for an additional year / 12 months). If the tenant exercises the right of first refusal during the term of this contract** (One year renewable for an additional year / 12 months) the Lessor will credit $1,000 for each paid month during this Lease Agreement.[10]

(Énfasis suplido).

Tal como queda visto, el derecho de la opción por el optante estaba condicionado a que fuera ejercido en el término allí acordado, es decir, dentro de un año del arrendamiento o su renovación por doce meses. Por lo cual, la apelante podía ejercitar su derecho a la opción de compra durante el término de un año de haber sido suscrito el contrato de

---

[10] Anejo 2 del recurso de *apelación,* pág. 19.

arrendamiento, periodo que se podía extender por un año adicional. En concreto, y conforme surge de la Sección 2da del referido contrato, el acuerdo comenzaría a partir del 1 de julio de 2014, venciendo el 30 de junio de 2015.[11]

Además, en el texto citado expresamente se dispuso que las obligaciones allí contraídas, relativas a la opción a compra del inmueble, podían ser prorrogadas por un año adicional, siendo la vigencia máxima del contrato hasta el 30 de junio de 2016. De lo que la señora Cosme Santiago tenía hasta esta última fecha para ejercitar la opción de compra, entiéndase, dentro del término preciso acordado.

Visto lo cual, queda establecido que, en lo relativo a la opción a compra, fue pactado por las partes que la optante, aquí apelante, estaba llamada a ejercer su derecho a la opción dentro de un **plazo cierto**. *P.D.C.M. Assoc. v. Najul Bez,* supra. (Énfasis nuestro). De nuevo, la apelante tenía un tiempo fijo y determinado para ejercer su derecho a la opción, característica esencial de dicha figura jurídica, lo que suponía que, de no ejercitarse tal derecho dentro del término previsto, se extinguiría o caducaría.

Considerada la moción de sentencia sumaria, juzgamos que no existe controversia sobre el hecho de que la apelante no ejerció su derecho a la opción dentro de las fechas precisadas en los párrafos que preceden. Ello queda constatado de la lectura conjunta del contrato citado y la declaración jurada suscrita por la propia apelante, incluida como prueba documental en la moción de sentencia sumaria, presentada en apoyo del segundo hecho propuesto como incontrovertido en la moción de sentencia sumaria.[12] Según afirmó allí la apelante, en la fecha en que suscribió la referida declaración jurada se encontraba en posesión del inmueble objeto del caso en función de un contrato

---

[11] *Íd.,* en la pág. 13.
[12] Apéndice 16 del recurso de apelación, pág. 54.

*renovado mes a mes.*[13] La alusión a la renovación del contrato mes a mes necesariamente supone el vencimiento del contrato original para entonces dar paso a su novación por el acuerdo de mes a mes. Tal renovación del contrato mes a mes se encontraba en contraposición del término fijo contenido en el contrato de opción, que ya hemos precisado según sus fechas. Entiéndase que, por su naturaleza temporal, no resulta imaginable un contrato de opción sin un plazo para su ejercicio, por reducido o indeterminado que sea. *Mayagüez Hilton Corp. v. Betancourt,* supra, pág. 249. En el contexto particular descrito la aludida *renovación mes a mes,* transgrede el requisito esencial de que el contrato de opción contenga un plazo cierto, un tiempo máximo pactado, en el que sea ejercido, máxime, cuando en este caso sí se había determinado tal plazo con precisión en la cláusula contractual antes citada, de un año, renovable a otro año, a partir de la firma del contrato. Visto que no resulta posible un cambio en este hecho medular establecido, resulta innecesario aguardar por la celebración del juicio para disponer de la demanda presentada.

Con todo, la señora Cosme Santiago promueve ante nosotros la teoría jurídica de que a la renovación contractual mes a mes acontecida le resultaba extensible al derecho a ejercitar la opción a compra, (no solo al arrendamiento del inmueble), afirmando haber ejercitado la opción de manera oportuna, a través de una carta que dirigió a los apelados a esos efectos el 22 de febrero de 2022, mientras estaba vigente el contrato. Sin embargo, al examinar la documentación incluida en la *Moción de Sentencia Sumaria,* y en la *Oposición a sentencia sumaria* (ausente en este último caso, como apuntamos), no surge rastro alguno de un documento que sirva para hacer constancia del alegado ejercicio de la opción. En el contexto de la consideración de una moción de sentencia

---

[13] *Íd.,* pág. 59.

sumaria, *la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa, León Torres v. Rivera Lebrón*, 204 DPR 20, 44 (2020), pero, según explicamos, tal carga probatoria no fue asumida, ni cumplida en este caso por la apelante.

Visto así, y a pesar de constituir el presunto ejercicio de la opción dentro de la renovación del contrato de arrendamiento mes a mes parte esencial de la causa de acción presentada, carecemos de prueba documental de ello. En consecuencia, aun si para fines *in argüendo* admitiéramos la teoría propuesta por la apelante, —de que conservaba su derecho a ejercitar la opción al momento en que envió la referida carta a los apelados, pues continuaba vigente el contrato—, de todos modos, la parte llamada a establecer tal hecho medular falló en incluir la prueba documental para sostenerlo.

## IV. **Parte dispositiva**

Por los fundamentos expuestos, se *confirma* la *Sentencia* recurrida y en consecuencia, se desestima la demanda.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones